UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

    CHRISTOPHER ANDREWS,
          Debtor.
_____/

Case No. 18-31345-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

CHRISTOPHER ANDREWS,

    Plaintiff,

v.

INDIRECT PURCHASER CLASS,

    Defendant.
_____/

Adversary Proceeding
Case No. 18-3070-dof

## OPINION GRANTING RENEWED MOTION TO DISMISS
## OF INDIRECT PURCHASER CLASS

### Introduction

The Defendant, Indirect Purchaser Class (the "IPC"), renews its motion to dismiss this adversary proceeding for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Renewed Motion"). Plaintiff's complaint alleges that the IPC's periodic garnishments in the aggregate amount of $2,356.96 within the 90 days pre-petition, exempted by the Plaintiff, constitute avoidable preferences under 11 U.S.C. § 547. Further, the Plaintiff contends that the IPC is also violating the automatic stay provided by 11 U.S.C. § 362 by "holding" the garnished funds. The Renewed Motion argues that (i) the garnished funds are exempt from avoidance pursuant to 11 U.S.C. § 547(c)(9) as they are not equal to or in excess of $6,451.00 and the Plaintiff's debts are not primarily consumer debts, and (ii) the receipt of garnished funds pre-

1

petition does not violate the automatic stay. The Plaintiff objects to the Renewed Motion. The Court grants the Renewed Motion for the reasons stated in this Opinion.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate or exemptions from property of the estate), and (C) (counterclaims by the estate against persons filing claims against the estate).

## Facts and Procedural History

### A. The Plaintiff's Complaints

The Plaintiff filed a voluntary Chapter 7 bankruptcy on May 31, 2018. On October 11, 2018, the Plaintiff filed his original Complaint against Marvin Miller LLC (a/k/a The Miller Law Firm), alleging that Dickinson Wright PLLC ("Dickinson Wright") represented Marvin Miller, LLC relative to a periodic garnishment of the Plaintiff in the amount of $2,356.96 that occurred within the 90 days prior to the Plaintiff's bankruptcy filing. According to the Plaintiff, Marvin Miller LLC "represents a class action for indirect purchasers," and "has a rule 11 sanctions against the Plaintiff for an amount of somewhere around $21,000." The Plaintiff claimed an exemption in the "Prefernce [sic] garnishment Dickinson wright [sic] law firm for indirect purchasing [sic.]" pursuant to 11 U.S.C. § 522(d)(5) in the amount of $2,500.00, and the Chapter 7 Trustee has not objected to the Plaintiff's claim of exemption. The Plaintiff further alleged that the garnishment constitutes a preference under 11 U.S.C. § 547, and that Dickinson Wright has not returned the

2

funds despite three requests by the Plaintiff. Finally, the Plaintiff alleged that The Miller Law Firm's retention of the garnished funds constitutes a violation of the automatic stay provided by 11 U.S.C. § 362, and that the Plaintiff is entitled to return of the garnished funds in the amount of $2,536.96; damages for emotional distress, late fees, transportation to and from his attorney's office, and miscellaneous expenses in the amount of $1,000; attorney fees to be determined by fee application; and putative damages in the amount of $2,500.00.

On January 31, 2018, the Complaint was amended to include the IPC as a defendant in this matter subject to identical allegations. On February 15, 2019, The Miller Law Firm was dismissed with prejudice. The IPC is therefore the sole remaining defendant in this matter.

### B. The Motions to Dismiss and Responses

On October 11, 2018, the IPC filed its initial motion to dismiss (the "Initial Motion"). In relevant part, the brief in support of the Initial Motion indicates that the IPC is a court-approved settlement class of indirect purchasers harmed by a price-fixing conspiracy among manufacturers of polyurethane foams. The U.S. District Court for the Northern District of Ohio approved a class action settlement in January 2015. *See In re Polyurethane Foam Antitrust Litig.*, Case No. 1:10-MD-2196 (N.D. Ohio) (the "Class Action" and the Court will be referred to as "Class Action Court"). The Plaintiff, appearing pro se, objected to the Class Action settlement, and filed numerous other objections and appeals, all of which were overruled. The Plaintiff's objections are alleged to have delayed receipt of $43.5 million from a settling defendant, delayed disbursement of settlement funds to the IPC, caused the IPC to incur unnecessary attorney fees responding to the various objections, and devolved into personal attacks against the trial court, the Sixth Circuit, and counsel for the IPC. On October 4, 2016, the Class Action Court entered an order imposing

3

sanctions against the Plaintiff in the amount of $15,303.00, noting that the Sixth Circuit Court of Appeals referred to the Plaintiff as a "professional objector," and further noting that the Plaintiff "…continues his vexatious use of the judicial system and does so either to extort a pay-off from IPC or as a delay tactic to prolong his coercion attempt." The court imposed sanctions against the Plaintiff pursuant to 28 U.S.C. § 1927, penalizing the Plaintiff for the amount of interest lost to the IPC because of the Plaintiff's frivolous filings.

The Plaintiff subsequently failed to appear at a court-ordered deposition on December 21, 2016, which resulted in an Order of Civil Contempt being entered against the Plaintiff on December 29, 2016. On January 6, 2017, the U.S. Marshals arrested the Plaintiff and delivered him before the Class Action Court. On February 28, 2017, the Class Action Court entered an Order Regarding Sanctions, which upheld the previously awarded sanctions against the Plaintiff, required the Plaintiff to pay interest on the previously awarded sanctions in the amount of $6,579.00, and imposed an additional sanction in the amount of $500.00 for the missed deposition. See Order Re: Sanctions, p. 2, attached to the Initial Motion as Exhibit B.

On March 28, 2017, the 16th Judicial District Court for the State of Michigan domesticated the sanctions orders in judgment in favor of the IPC in the amount of $22,406.00. The IPC issued a periodic garnishment to Estate Information Services, Inc. ("EIS") in an effort to collect on its judgment, and beginning in June 2017, funds garnished from EIS pre-petition "have been paid to, or are being held in trust to be paid to, the Indirect Purchaser Class Qualified Settlement Fund ('QSF')." The IPC contends that the QSF funds have already been distributed to eligible members of the settlement class in accordance with orders issued in the Class Action.

In relevant part, the IPC argued that the Complaint should be dismissed because the garnished funds are exempt from avoidance pursuant to 11 U.S.C. § 547(c)(9) as they are not equal

4

to or in excess of $6,451.00 and the Plaintiff's debts are not primarily consumer debts. In addition, IPC argued that the receipt of garnished funds pre-petition is not violative of the automatic stay.

On October 25, 2018, the Plaintiff filed a response to the Initial Motion, essentially arguing that "[t]here is an argument to be made that Rule 11 sanction is a consumer debt," that such debt is "certainly not corporation debt, or business debt," and that "one could argue [the debt] is personal." See response to the Initial Motion, p. 1-2. The Plaintiff further argues that holding on to garnished funds despite demands for their return violates the automatic stay, and that the Plaintiff understood that the "Miller Law Group" was the entity holding the funds in question. The Plaintiff supplemented his response on May 17, 2019.

On November 6, 2018, the IPC filed a reply brief arguing, in relevant part, that the Plaintiff was wrong in asserting that the debt in question is automatically consumer debt if it is not a business debt. Rather, certain debts, referred to as "interstitial," are neither consumer debt nor business debt. See November 6, 2018 reply, p. 3.

The Court held a hearing on the Initial Motion, among others, on November 28, 2018. The hearing on the Initial Motion was adjourned, and the Complaint was amended on December 31, 2018. As previously indicated, the Complaint was amended to include the IPC as a defendant but was otherwise identical to the original Complaint. After the adjourned hearing date on February 6, 2019, the Court entered an order requiring a stipulation that the IPC be added as a defendant in place of The Miller Law Firm. The Order also provided that the IPC could renew the Initial Motion once it was added to the case and The Miller Law Firm was dismissed. The Miller Law Firm was subsequently dismissed on February 15, 2019. The IPC filed the Renewed Motion on February 15, 2019, in which it incorporated the facts, arguments, and authority contained in the Initial Motion.

On March 4, 2019, the Plaintiff, through his then attorney, filed an objection to the Renewed Motion. The objection essentially argues that garnishment of a 1099 contractor is illegal, and that the debt at issue is "consumer debt" because it was incurred when the Plaintiff was "acting as a consumer by representing himself in a class action as a consumer."

The IPC filed a reply brief arguing that Michigan Court Rule 3.101(A)(4) expressly permits the garnishment of all periodic payments, including commissions. EIS indicated that the garnished monies owed to the Plaintiff were for commissions, and as such the periodic garnishment was expressly permitted by the relevant court rule. The IPC also argues that the sanctions imposed on the Plaintiff do not constitute "consumer debt" as they were not voluntarily incurred for personal or household purposes.

On May 6, 2019, after the withdrawal of his counsel, the Plaintiff filed a response to the Renewed Motion pro se, stating that the sanctions against him have no legal basis and were the result of prejudice, bias, and a smear campaign designed to discredit the Plaintiff and cover up court errors. The Plaintiff further argues that his filings in the Class Action were not willful, malicious, or vexatious. In addition, the Plaintiff attacks the Class Action settlements, the Class Action counsel, the IPC's authority to collect sanctions, service of a subpoena related to the imposition of sanctions, and the IPC's counsel in this case. To note, the issues before this Court are: (i) whether the garnished funds are exempt from avoidance pursuant to 11 U.S.C. § 547(c)(9) as they are not equal to or in excess of $6,451.00 and the Plaintiff's debts are not primarily consumer debts; and (ii) whether the receipt of garnished funds pre-petition violates the automatic stay.

# Law

A. **Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted." The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Supreme Court renounced the previously "'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 561-62 (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Supreme Court in *Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level," assuming that all of the complaint's allegations are true. *Id.* at 555 (internal quotations and citations omitted). In *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), the Supreme Court confirmed that the *Twombly* standard applies in all federal civil actions and not just in antitrust disputes as was the case in *Twombly*. The Supreme Court also emphasized that the assumption that all of the allegations are true does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at

555).  Moreover, the Supreme Court noted that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)).

In sum, while the plausibility standard first set forth by *Twombly* does not require "'detailed factual allegations'" or a showing of probability, *id.* at 678 (*quoting Twombly*, 550 U.S. at 555), "'the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Digeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (*quoting Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)).  When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'"  *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (*quoting Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief.  *Id.*

### B.     Preference Elements and Relevant De Minimis Exception

11 U.S.C. § 547(b) sets forth the elements of a preference:

> …the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

8

> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

However, the trustee may not avoid a transfer under 11 U.S.C. § 547(b) "…if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $6,425." 11 U.S.C. § 547(c)(9).

### C. Consumer Debts

The term "consumer debt" is defined by the Bankruptcy Code as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). "Consumer debt" is:

> used throughout the Bankruptcy Code. *See generally* 11 U.S.C. § 524(c)(6)(B) (excepting consumer debts secured by real estate from reaffirmation requirements); 11 U.S.C. § 707(b)(1) (providing for dismissal of cases filed by individual debtors under Chapter 7 "whose debts are primarily consumer debts' for substantial abuse); 11 U.S.C. § 1301 (a) (staying actions against a co-debtor to collect consumer debt). "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S. Ct. 607, 76 L. Ed. 1204 (1932). It is therefore appropriate to consider cases construing other sections of the Code in which the term "consumer debt" is used. *Cypher Chiropractic Ctr. v. Runski (In re Runski),* 102 F.3d 744, 746-47 (4th Cir. 1996).

*Swartz v. Strausbaugh (In re Strausbaugh)*, 376 B.R. 631, 636 (Bankr. S.D. Ohio 2007); *see also In re Stovall*, 209 B.R. 849, 852 (Bankr. E.D. Va. 1997) (in analyzing what constitutes "consumer debt" for purposes of the co-debtor stay provided by 11 U.S.C. § 1301, it is appropriate to consider cases construing "consumer debt" in other Bankruptcy Code sections). In addition, a non-business

debt is not automatically a consumer debt; rather, there is an "interstitial" category of debts for those that are neither consumer debt nor business debt. *See, e.g., IRS v. Westberry (In re Westberry)*, 215 F.3d 589 (6th Cir. 2000) (a tax debt is an interstitial debt); *Stovall* (same); *In re Peterson*, 524 B.R. 808 (Bankr. S.D. Ind. 2015) (an intentional tort judgment based on improperly accessing medical information is not a consumer debt as defined in 11 U.S.C. § 101(8), noting that such a debt fell into the "interstitial" area of debts that are not consumer debt, yet are also not business debt).

### 1. Tax Debts

"Consumer debt" as used in the Bankruptcy Code does not include tax debts. *Westberry*, 215 F.3d at 591. In so holding, the Sixth Circuit Court of Appeals noted "[a]lmost without exception, the bankruptcy courts that have addressed this question have determined that tax debt should not be considered consumer debt for purposes of the codebtor stay." *Id.* (citations omitted). The Sixth Circuit Court of Appeals relied on the following four bases to support its conclusion: (1) a tax debt is "incurred" differently than consumer debt in that the incurrence is not voluntary on behalf of the taxpayer, (2) consumer debt is incurred for personal or household purposes, while taxes are incurred for a public purpose, (3) taxes derive from earning money, while consumer debt derives from its consumption, and (4) unlike taxes, consumer debt usually involves the extension of credit. *Id.* The *Westberry* Court's analysis was based on the plain language and meaning of 11 U.S.C. § 101(8). *Westberry*, 215 F.3d at 592-93 (citations omitted).

### 2. Sanctions

"Courts historically have awarded punitive damages to punish the defendant and to deter the defendant and others from committing similar conduct in the future." *In re Durant*, 586 B.R. 212, 222 (Bankr. D. Md. 2018) (citations omitted). "The punishment and deterrence objectives of a punitive damages award are often necessary and very appropriate under applicable law, but differ in significant ways from a 'personal, family, or household purpose.'" *Id.* Thus, punitive damages do not meet the definition of consumer debt in 11 U.S.C. § 101(8). *Id. See also Peterson*, 524 B.R. at 813 (an intentional tort judgment is an interstitial debt, not a consumer debt or a business debt).

### D. The Automatic Stay

A debtor's initial filing:

> operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a). "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1).

If a creditor receives funds post-petition as the result of a pre-petition writ of garnishment, such post-petition funds would constitute estate property and therefore be subject to immediate turnover or a possible violation of the automatic stay. *In re Parham*, No. 16-44233, 2017 Bankr. LEXIS 2089, at *5 (Bankr. E.D. Mich. July 26, 2017) (*citing In re Manual*, No. 14-53487, 2014 WL 7405471 (Bankr. E.D. Mich. Dec. 24, 2014)). In contrast, funds garnished pre-petition are not property of the estate, and a refusal to return funds garnished pre-petition does not constitute a post-petition enforcement of a judgment or an attempt to control property of the estate. *Id.* at *5-6.

## Analysis and Conclusion

Plaintiff has alleged two claims in his amended complaint: avoidance of preferential transfers and violation of the automatic stay.

As to Plaintiff's preference claim, the IPC argues that the Court may not avoid a transfer under 11 U.S.C. § 547(b) "…if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $6,425." 11 U.S.C. § 547(c)(9). The transfers at issue are clearly less than the required minimum

amount under Section 547(c)(9). The issue then is whether the Plaintiff's debts are not primarily consumer debts. The IPC contends the Plaintiff's schedules clearly indicate that the Plaintiff's debts are not consumer debts.[1]

Turning to the Plaintiff's schedules, completed under penalty of perjury, Schedule D indicates that the Plaintiff has no secured creditors. On schedule E/F, the Plaintiff lists a claim by the I.R.S. in the amount of $14,000.00, a claim by the State of Michigan's Department of Treasury in the amount of $2,800.00, and a claim in the amount of $21,000.00 owed to Dickinson Wright and described as "sanctions judgment collection." The IPC and its class counsel are also listed in Schedule E/F, for notice purposes. The amounts owed to the I.R.S. and the State of Michigan are tax debts and are not consumer debt pursuant to the Sixth Circuit Court of Appeal's *Westberry* decision.

The remaining debt is comprised of sanctions awarded to the IPC in the Class Action. On October 4, 2016, the Class Action Court entered an order imposing sanctions against the Plaintiff in the amount of $15,303.00 pursuant to 28 U.S.C. § 1927 because the Plaintiff "…continues his vexatious use of the judicial system and does so either to extort a pay-off from IPC or as a delay tactic to prolong his coercion attempt." On February 28, 2017, the Class Action Court entered an Order Regarding Sanctions, which upheld the previously awarded sanctions against the Plaintiff, required the Plaintiff to pay interest on the previously awarded sanctions in the amount of

---

[1] To the extent the Court's consideration of the Plaintiff's schedules and the exhibits to the Initial Motion require the Court to make factual determinations outside of the motions to dismiss and the responses thereto, then the motions to dismiss are deemed by the Court to be motions for summary judgment, and the Court's decision is pursuant to Rule 56, applicable hereto pursuant to Bankruptcy Rule 7056.

$6,579.00, and imposed an additional sanction in the amount of $500.00 for a missed deposition. Irrespective of their legal basis, the debts were not voluntarily incurred, and are not of a personal, family, or household nature. Like the tax debt in *Westberry* and the intentional tort debt in *Peterson*, the Court finds that the sanctions award debt is interstitial debt, which is neither consumer nor business debt. As such, Section 547(c)(9)'s threshold amount is applicable, and judgment in favor of IPC is appropriate.

As to the automatic stay claim, the transfers in question were made pre-petition pursuant to a pre-petition periodic garnishment. The refusal to return funds garnished pre-petition does not constitute a post-petition enforcement of a judgment or an attempt to control property of the estate because the garnished funds were not available. As there were no actions taken by the IPC post-petition against estate property, there was no violation of the automatic stay, and judgment in IPC's favor as to this claim is appropriate.

Counsel for IPC is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on July 23, 2019**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge